UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LOUIS Y. FISHMAN, AS THE INDEPENDENT EXECUTOR OF THE SUCCESSION OF ELISE Y. FISHMAN, ET. AL. | CIVIL ACTION |
| VERSUS | NO: 10-2 |
| MORGAN KEEGAN & COMPANY, INC. | SECTION: J(2) |

**ORDER AND REASONS**

Before the Court are Defendant's **Motion for Judgment on the Pleadings (Rec. Doc. 31)**, Plaintiffs' **Memorandum in Opposition (Rec. Doc. 38)**, Defendant's **Reply Memorandum in Support (Rec. Doc. 41)**, and Plaintiff's **Sur-Reply Memorandum in Opposition (Rec. Doc. 44)**.

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

This case arises out of Waters Parkerson & Company, Inc.'s ("WPCo"), purchase of Louisiana Local Government Environmental Facilities and Community Development Authority Revenue Bonds Series 2004B ("the Series 2004B Bonds") from Defendant on May 5, 2005. The bonds purchased totaled $500,000, and Plaintiffs allege that WPCo, a registered investment adviser, was acting in its capacity as Plaintiffs' agent.

The Series 2004B Bonds are auction rate securities ("ARS"), which are debt instruments for which the interest rates are reset through auction. In addition to resetting the interest rates, investors can liquidate their ARS at these auctions, provided the

1

demand for purchases is sufficient to absorb the number of sell orders. ARS were first introduced in the 1980s and were originally viewed as cash alternatives and short-term investments that could be liquidated at the next auction if the investor wished to do so. Many of the country's largest investment firms, including Defendant, acted as the broker/dealers of these auctions. If there were not enough orders to purchase all of the shares being sold at any given auction, then the auction would fail. In order to prevent a failed auction, broker/dealers, including Defendant, routinely bid on their own behalf, making failed auctions a rare occurrence. The auctions for ARS worked well for a number of years until credit markets began to tighten in 2007. In February 2008 the ARS market collapsed, and most ARS auctions began to fail, including the auctions that Defendant conducted for the Series 2004B Bonds. In turn, investors, including Plaintiffs, found themselves with illiquid, long-term securities. In February 2009, Defendant began a voluntary program to repurchase ARS held by non-institutional investors, but Plaintiffs did not qualify for this program because their Series 2004B Bonds were sold to WPCo's institutional account and subsequently distributed to them without Defendant's knowledge. Defendant stated that it would also voluntarily repurchase ARS held by institutional investors "on a best efforts basis," but to

date Defendant has not repurchased Plaintiffs' bonds.

Plaintiffs filed suit against Defendant on January 4, 2010, and asserted the following: that Defendant violated (1) Section 17(a) of the Securities Act of 1933 ("Securities Act"); (2) Sections 10(b)[1] and 15(c)[2] of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 of the Code of Federal Regulations;[3] (3) Sections 712 and 714 of Louisiana's Blue Sky Law;[4] and (4) the Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA").  Plaintiffs allege that Defendant misrepresented ARS as a liquid and safe investment and failed to disclose that the invested funds could be tied up in the market indefinitely under certain circumstances.  Plaintiffs also allege that in February 2008 Defendant effectively withdrew its support of the ARS auctions it managed, which caused Plaintiffs' Series 2004B Bonds to become illiquid.

Defendant contends that it did not misrepresent the risks associated with ARS and that Plaintiffs had knowledge of those risks when they invested in the market.  Before the collapse of the ARS market in 2008, the United States Securities and Exchange

---

[1] 15 U.S.C. § 78j(b).

[2] 15 U.S.C. § 78o(c).

[3] 17 C.F.R. § 240.10b-5.

[4] LA. REV. STAT. ANN. § 51:712 and 714.

Commission ("SEC") issued a release stating that it was inappropriate to classify ARS as cash equivalents because of the liquidity risks involved in these holdings.  The SEC launched an investigation of fifteen investment firms participating in the ARS market, including Defendant, regarding the adequacy of disclosures to investors in 2003 and 2004 relating to the placement by these firms of bids in ARS auctions and their roles as broker/dealers in the liquidation of investments during the auctions.  The investigation concluded in May 2006, and the SEC found that the relevant investment firms, including Defendant, did not adequately disclose their participation in the ARS auctions to investors.  In response, Defendant prepared a written disclosure ("the Disclosure") of its material ARS practices and procedures for holders and purchasers of ARS.  This document also outlined several risk factors of ARS, described the possibility of failed auctions, and noted that Defendant was not obligated to submit bids in auctions for its own account in order to prevent failed auctions.  The Disclosure was posted on Defendant's website and available to the general public and all investors. Defendant now moves to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(c), and Plaintiffs oppose the motion.

## THE PARTIES' ARGUMENTS

Defendant argues that Plaintiffs' First Amended Complaint

should be dismissed because it fails to state a claim for relief as a matter of law and fails to comply with the heightened pleading requirements for fraud under Rule 9(b) of the Federal Rules of Civil Procedure.  Defendant states that Plaintiffs cannot maintain a claim for violation of the LUTPA because the statute is inapplicable in securities fraud cases.  Likewise, Plaintiffs cannot maintain a claim for violation of Section 17(a) of the Securities Act because the statute does not provide for a private right of action.

   Defendant also contends that Plaintiffs' claims under Sections 10(b) and 15(c) of the Exchange Act, as well as those brought pursuant to Louisiana's Blue Sky Law, are time-barred and lack the heightened specificity required by Rule 9(b).  Defendant argues that the claims are time-barred because the conditions of the ARS market and Defendant's disclosures, especially the Disclosure in 2006, put Plaintiffs on notice with reasonable diligence of any alleged fraud, but they failed to file suit within the applicable statutes of limitation and prescriptive periods.  In support of its argument, Defendant points to other courts that have held that the disclosures ordered by the SEC in 2006 were sufficient to put investors on notice in order to negate claims of reasonable reliance.  Even if Plaintiffs' claims are not time-barred, Defendant contends that the pleadings lack the heightened specificity required when alleging fraud, so

Plaintiffs' claims should be dismissed.  Defendant references a recent district court opinion from the Northern District of Georgia that dismissed similar claims filed by the SEC against Defendant on summary judgment and asks the Court to apply similar reasoning in the instant matter to dismiss Plaintiffs' claims. See <u>Sec. and Exch. Comm'n v. Morgan Keegan</u>, __F. Supp. 2d__, 2011 WL 2559362 (N.D. Ga. June 28, 2011).

   Plaintiffs do not oppose Defendant's motion to dismiss with regard to its claims pursuant to the LUTPA and Section 17(a) of the Securities Act.  However, with regard to Plaintiffs' claims under Sections 10(b) and 15(c) of the Exchange Act, as well as those brought pursuant to Louisiana's Blue Sky Law, Plaintiffs argue that their claims are not time-barred because WPCo purchased the relevant ARS in 2005, prior to the Disclosure in 2006, and Plaintiffs had no reason to believe that Defendant had misrepresented the liquidity of ARS prior to the widespread failure of ARS auctions in February 2008, at which time they filed suit within the applicable statutes of limitation and prescriptive periods.  Specifically with regard to their claims under Section 15(c) of the Exchange Act, Plaintiffs argue that, pursuant to Louisiana Civil Code articles 3464 and 1967, the statute of limitations was interrupted by Defendant's statements in September 2009 regarding its voluntary program to repurchase ARS because those statements acted as an acknowledgment of

6

Plaintiffs' rights, upon which Plaintiffs relied in waiting to file suit. Plaintiffs also try to distinguish the Northern District of Georgia opinion because the opinion is based on Defendant's written disclosures after the SEC investigation in 2006, and Plaintiffs' ARS purchases in this case occurred in 2005.

## DISCUSSION

Under Rule 12(c), "a party may move for judgment on the pleadings" at any time "after the pleadings are closed" and assert the defense of "[f]ailure to state a claim upon which relief can be granted . . . ." FED. R. CIV. P. 12(c) and 12(h)(2). "A Rule 12(c) motion is reviewed using the same standard employed under Rule 12(b)(6)." In re Katrina Canal Breaches Consol. Litig., 2007 WL 763742, at *3 (E.D. La. Mar. 9, 2007).

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1). Thus, to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible

on its face." Ashcroft v. Iqbal, __U.S.__, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. Iqbal, 129 S.Ct. at 1949-50.

In this case, Defendant argues that Plaintiffs' claims pursuant to the LUTPA and Section 17(a) of the Securities Act should be dismissed because the statutes do not provide for the causes of action that Plaintiffs assert. Plaintiffs do not oppose Defendant's motion to dismiss with regard to their claims pursuant to these statutes, and it appearing to the Court that Defendant's arguments have merit, the Court finds that Defendant's motion should be granted as to Plaintiffs' claims pursuant to the LUTPA and Section 17(a) of the Securities Act. See Stephenson v. Paine Webber Jackson & Curtis, Inc., 839 F.2d 1095, 1101 (5th Cir. 1988); see also Landry v. All Am. Assurance Co., 688 F.2d 381, 384-91 (5th Cir. 1982). Whether Plaintiffs'

other claims are time-barred or have not been pleaded with sufficient specificity is still at issue.

A claim pursuant to Section 15(c) of the Exchange Act must be "brought within one year after the discovery that such sale or purchase involves such violation and within three years after such violation." 15 U.S.C. § 78cc(b);[5] see Vigman v. Cmty. Nat'l Bank & Trust Co., 635 F.2d 455, n.12 (5th Cir. 1981) (noting that "[i]t is clear that the limitations period of s[ection] 29(b) by its own terms applies to actions under s[ection] 15(c)(1) . . . ."). In this case, WPCo purchased ARS from Defendant on May 5, 2005, Plaintiffs allege that they did not have notice of fraudulent conduct by Defendant until the ARS auction failures in February 2008, and Plaintiffs did not file suit against Defendant until January 4, 2010. This means that Plaintiffs did not file suit against Defendant until almost two years after the date on which they claim to have received notice of a violation of Section 15(c) of the Exchange Act, which is beyond the one-year statute of limitations period. Thus, Plaintiffs' claims pursuant to Section 15(c) of the Exchange Act are time-barred. The Court does not find persuasive Plaintiffs' reference to Louisiana law and argument that the statute of limitations period was interrupted by Defendant's statements in connection with its

---

[5] Commonly referred to as Section 29(b) of the Exchange Act.

9

voluntary program to repurchase ARS.  The Court finds that this voluntary repurchase program did not amount to any sort of admission or recognition of Plaintiffs' rights.

A private right of action pursuant to Section 10(b) of the Exchange Act and Rule 10b-5 of the Code of Federal Regulations must be brought within two years "after the discovery of the facts constituting the violation" or within five years "after such violation."  28 U.S.C. § 1658(b).  Discovery in this context "encompasses not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff would have known."  Merck & Co., Inc. v. Reynolds, 130 S. Ct. 1784, 1796 (2010).  Likewise, no person may sue under Louisiana's Blue Sky Law "more than two years from the date of the contract for sale or sale, if there is no contract for sale."  LA. REV. STAT. ANN. § 51:714(C)(1).  "Because the time period . . . is prescriptive and not preemptive, the period does not begin to run until the plaintiff[] ha[s] either actual knowledge of a violation or notice of facts which, in the exercise of due diligence, should lead to actual knowledge."  Beckstrom v. Parnell, 97-1200, p. 7 (La. App. 1 Cir.  11/6/98); 730 So. 2d 942, 947.

In this case, Defendant contends that Plaintiffs knew or should have known of any alleged fraud by May 2006 when the SEC ordered new disclosures regarding the ARS practices of investment firms, including Defendant, and other courts have found that

these new disclosures properly put investors on notice of potentially fraudulent activity. This would mean that Plaintiffs' claims pursuant to Section 10(b) of the Exchange Act and Louisiana's Blue Sky Law would be untimely because the two-year statute of limitations and prescriptive period had passed by the time Plaintiffs filed suit in January 2010. On the other hand, Plaintiffs argue that they did not receive notice of Defendant's allegedly fraudulent practices until February 2008 when the ARS auctions market collapsed, so their January 2010 suit was timely filed within the two-year statute of limitations and prescriptive period.

The Court finds that Plaintiffs' claims pursuant to Section 10(b) of the Exchange Act and Louisiana's Blue Sky Law are not time-barred. Of particular importance in this case is the fact that WPCo purchased the relevant ARS on behalf of Plaintiffs in May 2005, which was before the SEC investigation in 2006 and the subsequent Disclosure published by Defendant. While the ARS market began to decline in 2007, Plaintiffs' ARS investments remained liquid largely because Defendant still chose to bid on their own auctions during that time. It was not until February 2008 that broker/dealers, including Defendant, stopped bidding in their own ARS auctions, and this caused investors' ARS to become illiquid. Plaintiffs concede that they were put on notice at this time of potentially fraudulent activity on the part of

Defendant during its transactions with WPCo in May 2005, and they filed suit within two years of that date.  Although Defendant references its various disclosures after 2006 and general public knowledge about the ARS market after 2007, the Court is not convinced that Plaintiffs, as non-institutional investors, should have investigated and known this information after their purchases in 2005 for the purpose of noticing potentially fraudulent conduct.  The cases referenced by Defendant to the contrary largely involve investors who made purchases after the SEC investigation in 2006, at which time investors would have been able to avail themselves at the time of their ARS purchases of the updated disclosures published by investment firms acting as broker/dealers for the ARS auctions.  While Plaintiffs may not ultimately prevail on their claims under Section 10(b) of the Exchange Act and Louisiana's Blue Sky Law, the Court finds that those claims have not prescribed.

Defendant argues alternatively that Plaintiffs' claims pursuant to Section 10(b) of the Exchange Act and Louisiana's Blue Sky Law should be dismissed because Plaintiffs have not met the heightened pleading requirements of Rule 9(b).  Rule 9(b) requires a heightened standard for pleading fraud, and this heightened standard applies to securities fraud suits.  Fed. R. Civ. P. 9(b); <u>Tuchman v. DSC Communications Corp.</u>, 14 F.3d 1061, 1067 (5th Cir. 1994).  Generally, plaintiffs must allege "the

particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Shushany v. Allwaste, Inc., 992 F.2d 517, 521 (5th Cir. 1993) (internal quotations omitted). However, "[w]hat constitutes 'particularity' will necessarily differ with the facts of each case . . . ." Id. "In securities fraud suits, this heightened pleading standard provides defendants with fair notice of the plaintiff's claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims and then attempting to discover unknown wrongs." Tuchman, 14 F.3d at 1067.

To establish a violation of Section 10(b) of the Exchange Act, Plaintiffs "must show (1) a misstatement or an omission (2) of material fact (3) made with scienter (4) on which the [P]laintiff[s'] relied (5) that proximately caused [the Plaintiffs'] injury." Id (internal quotations omitted). A claim for securities fraud under Louisiana's Blue Sky Law must establish that "(1) the defendant made a false or misleading statement of a material fact or failed to state a material fact necessary in order to make the statement not misleading; (2) the plaintiff did not know of the untruth or omission; (3) the defendant knew, or in the exercise of reasonable diligence, could

13

have known, of the untruth or omission." Ponthier v. Manalla, 06-632, p. 20 (La. App. 5 Cir. 1/30/07), 951 So. 2d 1242, 1255 (quoting Taylor v. First Jersey Sec., Inc., 533 So. 2d 1383, 1385 (La. App. 4 Cir. 1988)).  Based on the facts of this case, the Court finds that Plaintiffs have sufficiently plead with particularity their allegations of fraud under Section 10(b) of the Exchange Act and Louisiana's Blue Sky Law.  While the Northern District of Georgia dismissed similar claims by the SEC against Defendant, this was done at the summary judgment stage. See Sec. and Exch. Comm'n v. Morgan Keegan, __F. Supp. 2d__, 2011 WL 2559362 (N.D. Ga. June 28, 2011).  In this case, Defendant seeks to dismiss Plaintiffs' claims pursuant to Rule 12(c), and the Court finds that Plaintiffs' First Amended Complaint meets the requirements of Rules 8(a) and 9(b) in order to survive dismissal at this stage of the litigation.

   Accordingly, **IT IS ORDERED** that Defendant's **Motion for Judgment on the Pleadings (Rec. Doc. 31)** is hereby **GRANTED IN PART** and **DENIED IN PART**.  The motion is **GRANTED** with respect to Plaintiffs' claims pursuant to Section 17(a) of the Securities Act, Section 15(c) of the Exchange Act, and the LUTPA.  These claims are **DISMISSED WITH PREJUDICE**.  The motion is **DENIED** with respect to Plaintiffs' claims pursuant to Section 10(b) of the Exchange Act and Louisiana's Blue Sky Law.

New Orleans, Louisiana, this 24th day of August, 2011.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE